IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS SANCHEZ,                  §
TDCJ-CID NO. 210286,             §
                                 §
              Petitioner,        §
                                 §        CIVIL ACTION NO. H-06-0062
v.                               §
                                 §
NATHANIEL QUARTERMAN,            §
                                 §
              Respondent.        §

## MEMORANDUM OPINION AND ORDER

Petitioner Thomas Sanchez, an inmate of the Texas prison system, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a state court conviction. The respondent filed a motion for summary judgment. After considering the motion, Sanchez's response, the record, and the applicable law, the court will grant the respondent's motion and dismiss the habeas petition for the reasons stated below.

## I. Procedural History

A jury found Sanchez guilty of possession of more than one gram and less than four grams including adulterants and dilutants of a controlled substance, heroin. State v. Sanchez, No. 885776 (230th Dist. Ct., Harris County, Tex., June 4, 2002). He was then sentenced to fifty years in prison. Id.; see Ex parte Sanchez, No. 04,557-04 at 157. Sanchez filed an appeal, and the Court of

Appeals for the Sixth Judicial District of Texas affirmed the trial court's judgment in an unpublished opinion.  Sanchez v. State, No. 06-02-00135-CR, 2003 WL 22070744 (Tex. App. -- Texarkana Sept. 8, 2003, pet. ref'd).  Sanchez filed a petition for discretionary review, which was refused by the Texas Court of Criminal Appeals on March 4, 2004.  Sanchez v. State, No. 1833-03.  See Texas Court of Criminal Appeals Website (http://www.cca.courts. state.tx.us/).

On September 20, 2004, Sanchez filed an application for a writ of habeas corpus challenging his conviction.  Ex parte Sanchez, No. 04,557-04 at 2.  The Court of Criminal Appeals remanded the state application for an evidentiary hearing on April 6, 2005.  Id. at cover.  After the district court returned the application, the Court of Criminal Appeals denied it without a hearing on September 28, 2005.  Id., Vol. 2, at cover.  Sanchez then filed the pending federal petition for a writ of habeas corpus with this court on January 2, 2006.  See Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (a pro se prisoner's habeas petition is considered to be filed on the date that he gives it to the prison authorities for mailing to the district court).

## II.  Claims for Relief

Sanchez alleges the following in his petition:

> 1.   denial of effective assistance of counsel at trial;

2.    waiver of counsel was not knowingly made in part due to trial court's refusal to appoint new counsel; and

3.    denial of effective assistance of appellate counsel.

See Petition, Docket Entry No. 1, at 7.

### III.   The Applicable Legal Standards

This habeas proceeding is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief.   Robertson v. Cain, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court.   Williams v. Taylor, 120 S.Ct. 1495, 1519 (2000), citing 28 U.S.C. §§ 2254(d)(1) and (2).   A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts

-3-

a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. <u>Early v. Packer</u>, 123 S.Ct. 362, 365 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. <u>Williams</u>, 120 S.Ct. at 1520, 1523. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. <u>Id.</u> at 1521.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1041 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Miller-El</u>, 123 S.Ct. at 1036.

-4-

### IV.  __Ineffective Assistance of Trial Counsel__

Sanchez alleges that he was denied effective assistance of trial counsel because his attorney:  (a) failed to locate a laboratory for drug analysis;[1] (b) failed to obtain an independent drug analysis; (c) failed to obtain a second continuance by wrongfully stating to the court that he had located a drug analysis lab; (d) wrongfully persuaded Sanchez to advise the court that he desired to represent himself; (e) failed to object to the trial court's "off the record" denial of counsel; and (f) breached his duty of loyalty to his client.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in Strickland v. Washington, 104 S.Ct. 2052 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  Id. at 2064.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998).

---

[1]    The apparent objective in obtaining an independent analysis was to show that the drugs were diluted.  Sanchez stated to the trial court that his defense was that the drugs were mixed.  Vol. 3 Statement of Facts at 12.

-5-

A counsel's performance is deficient if it falls below an objective standard of reasonableness. Strickland, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Strickland, 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 2068. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. Id.

-6-

Sanchez presented his ineffective assistance of trial counsel claims in his state habeas application.   Ex parte Sanchez, No. 04,557-04 at 7-9.   The Court of Criminal Appeals denied the application without a written order based on the trial court's findings of fact and conclusions of law.   Id., Vol. 1, at 13-16; Vol. 2, at cover.   A federal habeas court must presume the underlying factual determinations of the state court to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockrell, 123 S.Ct. 1029, 1042 (2003).[2]   Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El, 123 S.Ct. at 1041.

The record rebuts Sanchez's claims that his trial attorney was not diligent in his efforts to locate an independent drug analysis lab or to obtain independent test results.   The attorney, Robert

---

[2]   "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."   Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001); see also Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit."); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997) (findings of fact can be implied from explicit conclusions of law).

Scott, filed a Motion for Quantitative Analysis, which was granted
on March 7, 2002.  See Transcript (Tr) at 62-64.  Nineteen days
later, on March 26, 2002, Scott reported to the trial court that he
contacted numerous people about finding an expert to test the
substance at issue and that he also spoke with a city chemist
regarding finding someone with proper credentials.  Vol. 2 State-
ment of Facts (SOF) at 24-25.  Scott moved for a continuance to
allow him additional time to find an expert and obtain a chemical
analysis.  Id. at 25-27.  The motion was granted.  Id. at 27; Tr.
at 65-69.

On May 31, 2002, Scott sought a second continuance on the
basis that he still had not found a lab despite his diligent
efforts.  3 SOF at 4-5.  Scott also informed the court that he had
spoken with the Houston chemist who did the original analysis to
see if she knew anyone else who could perform a test.  Id. at 7.
Scott also obtained from other attorneys and the State's prosecutor
a list of people who might be able to assist him.  Id.  In reaching
its conclusion, the trial court noted that Scott had filed a motion
requesting an independent analysis several months earlier, which
the court had granted, and had later granted Scott a continuance
when he had indicated that he was unable to find a lab.  Id. at 6.
The court further observed that Scott found a lab but needed more
funds for testing and that the court had authorized additional
funding.  Id.  However, Scott then learned that the lab could not

-8-

do the necessary analysis.  Id.  After observing that the case had
been reset two times in order for Scott to locate and retain a drug
testing lab and that a lab could not be located despite Scott's
efforts, the court denied the motion for continuance regarding the
drug lab.  Id. at 8.  Although Scott was unable to secure the
assistance of a qualified chemist, the record indicates that he
made an effort to do so.  Sanchez alleges that Scott failed to use
an investigator to help locate witnesses; however, there is no
evidence to support this claim.  On the contrary, the record
indicates that Scott did use an investigator to locate witnesses.
See 2 SOF at 25; 3 SOF at 4.

Apart from Sanchez's failure to show that Scott failed to make
any effort to obtain a drug analysis or witnesses, Sanchez has
failed to show what an analysis or witness testimony would have
proven.  Without such a showing, Sanchez's claim must fail.  See
Gray v. Lucas, 677 F.2d 1086, 1094 (5th Cir. 1982).  Notwith-
standing Sanchez's allegations, there is no evidence to show that
Scott's performance was deficient regarding his alleged failure to
find an independent lab to perform independent tests on the heroin.
See Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994).
Therefore, Sanchez's claims regarding the lab and the tests are
subject to dismissal.

Sanchez complains that Scott was ineffective for failing to
obtain a continuance because he did not correct a misunderstanding

by the trial judge regarding his efforts to find a drug analysis laboratory.   As stated above, there were two hearings in which Scott requested continuances so that he would have more time to locate a lab.   The following colloquy occurred during the first hearing, held March 22, 2002:

> **MR. SCOTT**: . . . As the Court is well aware, also, that there was a motion filed for chemical analysis.  I have explained to my client this morning as to my inability to follow up on that motion even though the Court was gracious enough to expand the amount of money that was available for that purpose.  I have been unable to find, I guess, a lab or a person that would do that type of work that we're requesting to be done in that, in the matter of analyzing the chemical makeup and weight of the narcotics that were seized in this case.   Therefore, I would request a continuance based on that issue. . .

3 SOF at 4-5.

The trial court recounted Scott's efforts to find a lab and obtain sufficient time in order to achieve this objective.   The court specifically stated:

> . . . As far as the request for an independent analysis, the record will reflect that Mr. Scott on behalf of the defendant had filed a motion requesting the independent analysis several months ago, which the Court -- that motion was granted. This matter was previously set for trial on March 22 of 2002.   On that trial setting Mr. Scott had indicated to the Court that he was at that time unable to locate a lab or individual who would perform the analysis at the amount of monies which the Court had previously authorized, and requested that the case be continued.  That request was granted.
>
> The Court increased the amount of monies available to the amount that Mr. Scott told the Court that the lab that he had been in contact with would perform the

-10-

analysis.  In other words, Mr. Scott did, in fact, locate
a lab that would perform the analysis and was given an
amount by that lab which would be sufficient for them to
perform the analysis.  Therefore, when Mr. Scott advised
the Court of that the Court raised the amount requested
for the analysis to the same amount that the lab
indicated that they would perform the test for and
authorized that those funds be made available so that
Mr. Scott might retain that lab to perform the analysis.
And it's my understanding, Mr. Scott, that after the
Court authorized those additional funds you then
recontacted that lab and they indicated to you that they
did not do the type of analysis that you were requesting
at all.

**MR. SCOTT:**  That's correct.

Id. at 6-7.

In addition to reflecting Scott's efforts at locating a lab,
the above dialogue clearly proves that the court understood what
Scott had done to obtain independent test results.  Sanchez's
allegation that Scott misled the court is insupportable because
there is no evidence to support the allegation.  See Ross v.
Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983).  Moreover, there
is no allegation as to how the alleged misunderstanding would have
prejudiced Sanchez's defense.  Specifically, there is no indication
that the second motion for a continuance would have been granted
had the trial court been aware of the true state of the efforts to
find and retain a drug analysis lab.  This claim is also subject to
dismissal because there is no indication that the alleged

misunderstanding effectively denied Sanchez a fair trial.   <u>See</u>
<u>Galvan v. Cockrell</u>, 293 F.3d 760, 764 (5th Cir. 2002).

Sanchez contends that Scott deceived the court and denied him
effective counsel by telling the court that Sanchez wanted to
represent himself.  He also states that Scott had falsely stated to
the court that he had visited Sanchez twice while he was in jail.

The following exchange discredits Sanchez's allegation that
Scott lied to the court that Sanchez wanted to represent himself:

> **THE COURT:** . . . And Mr. Sanchez, Mr. Scott has advised
> this Court that you wish to represent yourself.

> **THE DEFENDANT:**  Yes, Your Honor.

3 SOF at 8.

If Scott had indeed misrepresented Sanchez's willingness to
represent himself, Sanchez had the opportunity to deny it to the
trial court.  Instead, Sanchez engaged in a lengthy discussion with
the court concerning the pitfalls of self-representation.  At one
point the court asked Sanchez, "In other words, you still wish to
represent yourself?"  Sanchez answered, "Yes, ma'am."  3 SOF at 9.
Later, the court asked, "And you are requesting of this Court that
Mr. Scott be removed from your case and that you be permitted to
represent yourself in the trial on the merits, is that correct?"
Sanchez unequivocally answered, "That's correct, Your honor."  <u>Id.</u>
at 11.  Even if Scott had misstated Sanchez's desires at some point

-12-

before trial, Sanchez made no effort to correct the matter, and he has failed to show how the alleged misstatement harmed him to the extent that his trial was fundamentally unfair.  See Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993).

With regard to Scott's alleged misstatement about the number of times he discussed the case with Sanchez in jail, there is no indication that the court was fundamentally misled by the testimony.  Sanchez himself points out that the court heard conflicting testimony concerning how much discussion occurred between Scott and Sanchez.  See Response, Docket Entry No. 17, at 9, citing 3 SOF at 37-39.  Moreover, the fact that Scott may have limited the amount of time spent with Sanchez before trial does not automatically mean that his representation was ineffective. Schwander v. Blackburn, 750 F.2d 494, 499 (5th Cir. 1985) ("[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel."), quoting Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).  Therefore, Sanchez's allegations that Scott deceived the trial court do not support a claim that would entitle him to federal habeas relief.

Sanchez alleges that his trial attorney was ineffective for failing to object to the judge's "going off the record" during the hearing on Sanchez's motion to dismiss counsel.  See Memorandum, Docket Entry No. 2, at 9 (Memo page 5).  He argues that Scott's

actions were unreasonable when he failed to move for the hearing to be recorded in order to preserve his client's right to appeal.

This allegation was considered by the Court of Criminal Appeals, which remanded the state habeas action to the state district court for findings of fact "as to whether applicant's 'Motion to Dismiss Court Appointed Attorney and Appoint New Counsel to Act on Behalf of Defendant' was considered by the court, whether the court informed applicant that no new counsel would be appointed, and whether applicant clearly expressed his desire to proceed pro se." Ex parte Sanchez, No. 04,557-04, Apr. 6, 2005, Order at 2-3. On June 20, 2005, the state district judge, relying upon the state court records and her own personal recollection, entered the Trial Court's Findings of Facts and Conclusions of Law and Order After Remand. Ex parte Sanchez, No. 04,557-04, Supp. Vol. at 13-16. The trial court found that it had considered Sanchez's motion to dismiss Scott and conducted a hearing on the motion. Id. at 13. In doing so, the court, without a reporter, listened to Sanchez's complaints about Scott and gave Scott an opportunity to respond. Id. At the end of the hearing, the court determined that Sanchez was receiving effective assistance of counsel. Id. The court then advised Sanchez that his motion would be denied and that no new counsel would be appointed. Id. Whereupon, Sanchez asked to represent himself. Id. Upon hearing the request to proceed pro se, the trial court questioned Sanchez

-14-

extensively about his background, his education, his understanding of the law, and the disadvantages of self-representation. Id. at 14; 3 SOF 11-54. Having found these facts to be true, the trial court concluded that Sanchez clearly expressed his intent to have Scott removed knowing that he would have to proceed without counsel if the trial court granted his request. Ex parte Sanchez, No. 04,557-04, Supp. Vol. at 14. The Court of Criminal Appeals subsequently denied Sanchez's state habeas application, without a written order, based on the trial court's findings. Id. at cover.

The state court's finding is not rebutted by any clear and convincing evidence, nor is it unreasonable. There is no indication that Scott would have been sustained had he moved that the hearing on Sanchez's motion to remove Scott be recorded. Therefore, Sanchez's allegations about Scott's alleged failure to object must be rejected. See Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

Sanchez further argues that Scott's failure to object to the trial judge's "going off the record" denied him effective assistance of counsel by creating a conflict of interest. See Memorandum, Docket Entry No. 2, at 10 (Memo page 6). As discussed above, there is no basis to the supposition that an objection would have been sustained. Therefore, Scott was not ineffective for failing to make an objection. Moreover, Sanchez's allegation does

not support a conflict of interest claim.  See Ramirez v. Dretke, 396 F.3d 646, 650 (5th Cir. 2005) ("A conflict of interest is present 'whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing.'").  The rejection of this claim by the state court was not contrary to clearly established federal law as determined by the Supreme Court, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court.  Nor was the decision an unreasonable determination of the facts.  Therefore, the claim shall be denied.

## V.  Involuntary Waiver of Counsel -- Failure to Replace Counsel

Sanchez argues that the trial court abused its discretion in refusing to replace Scott after Sanchez had shown good cause for dismissing him and that his subsequent waiver of counsel was involuntary.  The court has already found that the record supports the state court's determination that Scott's performance was not deficient.  Moreover, while Sanchez is entitled to legal representation at a criminal trial, there is no guarantee that he shall be provided the counsel of his choice.  See Neal v. Texas, 870 F.2d 312, 315 (5th Cir. 1989) ("[T]here is no constitutional right to representation by a particular attorney."); United States v. Snyder, 707 F.2d 139, 145 (5th Cir. 1983) ("Although the sixth

amendment's right to counsel in criminal cases is absolute, an accused's right to particular counsel is not.").

Sanchez argues that there was good cause to dismiss Scott because he had failed to find a lab to test the drugs. However, the state court did not agree, finding that Scott had made a good faith effort to locate such a lab. Contrary to Sanchez's allegations, the trial court was aware of what had transpired. Moreover, Scott had been Sanchez's attorney for approximately nine months before the trial setting. See 3 SOF at 11. There had been two prior trial settings, yet Sanchez had not filed a motion to remove Scott until the third trial date. Id. at 37. Obviously, appointment of new counsel would necessitate further delay of Sanchez's trial, and the trial court's decision to refuse to grant such an appointment should be upheld given Sanchez's belated attempt to change counsel before trial. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978) (choice of counsel "is a right and a proper tool of the defendant, [but] it cannot be used merely as a manipulative monkey wrench. A defendant cannot assume that the right to choose counsel affords the 'right to obtain delay at his whim and caprice, or to obtain reversal because he was unable to frustrate justice.'"), quoting United States v. Grow, 394 F.2d 182, 210 (4th Cir. 1968). Like any defendant, Sanchez's right to counsel must be weighed against the need for efficient administration of justice. Id.

Although a defendant has the right to appointed counsel, he also has the right to dispense with counsel despite the obvious drawbacks of doing so.  See Faretta v. California, 95 S.Ct. 2525, 2527 (1975).  Knowing this, the trial court made a diligent effort to reconcile the differences between Sanchez and Scott so that Sanchez could retain Scott's services.  3 SOF 47-48, 50.  Sanchez refused to relent.  Id.  Having made it clear to Sanchez that he was not going to get another attorney, the court went to great lengths to advise him of the disadvantages of self-representation. 3 SOF 47-52.  Sanchez was specifically warned that he would be required to follow the law and would have to conform to the same standards of conduct as if he were a licensed attorney.  Id. at 48. When Sanchez persisted with his request despite the court's warnings, the court, as explained earlier in this Memorandum Opinion and Order, questioned Sanchez extensively about his understanding of the court proceedings and his background.

Although Sanchez had no formal training and was not well versed in the law, he persisted in his request for self-representation.  3 SOF at 27.  Sanchez may have lacked education, but he was familiar with the criminal courts after having faced prosecution on at least three prior occasions.  Id. at 20.  He had also previously filed for a writ of habeas corpus although he confessed that he was not satisfied with the results.  Id. at 27. In general, Sanchez demonstrated a basic understanding of the

-18-

proceeding and evinced a willingness to represent himself understanding the disadvantages he faced.  Id. at 53.  Having heard Sanchez's answers and testimony, the trial court determined that he freely, voluntarily, and knowingly made the decision to waive counsel.  Id. at 54.  However, the court also appointed Scott to serve as standby counsel and reset the trial for the following Monday.  Id.

The trial court's actions established that Sanchez's decision was unquestionably voluntary.  See Dunn v. Johnson, 162 F.3d 302, 307 (5th Cir. 1998).  Moreover, the court went to great lengths to dissuade Sanchez from making such a rash choice.  The trial court's actions and the subsequent state decision to deny habeas relief regarding waiver of counsel did not violate Sanchez's constitutional rights, and he is not entitled to relief in this habeas action.

## VI.  Ineffective Assistance of Appellate Counsel

Sanchez raises several complaints about his appellate counsel. He alleges that he was denied counsel at a "critical stage" because his appellate counsel did not contact him about filing a motion for new trial until after the expiration of the 30-day period. Petition, Docket Entry No. 1, at 7.  He also contends that his appeal should have been abated because he had no counsel during the 30-day period to file a motion for new trial.  Memorandum, Docket Entry No. 2, at 17 (Memo page 13).  Sanchez further complains that

his appellate counsel was ineffective for failing to raise the following claims on appeal:  (a) denial of counsel at a "critical stage"; (b) trial court's "off the record" denial of Sanchez's request for new counsel; (c) ineffective assistance of trial counsel; and (d) insufficient evidence.  Petition, Docket Entry No. 1, at 7; Memorandum, Docket Entry No. 2 (Memo pages 13-18).

Sanchez's allegation that he was denied counsel at a "critical stage" does not support a claim for relief because neither the Supreme Court nor the Fifth Circuit have determined that a defendant has a right under the Sixth Amendment to counsel during the post-conviction, pre-appeal stage.  Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003) (the Fifth Circuit and the Supreme Court have not addressed the issue as to whether "right to counsel attaches on a motion for new trial.").  Moreover, claims regarding ineffective assistance of counsel are generally not considered on direct appeal in the state courts.  See Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  This is because appellate courts usually cannot determine a claim of ineffective assistance of counsel because in most cases there is no record to support the claim.  Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).  In such cases the proper procedure would be to present the claim in a state habeas application.  Id.  In the present action Sanchez relies upon his conclusory allegation that he was not contacted by his appellate counsel.

Sanchez attempts to support his claim by citing <u>Jack v. State</u>, 42 S.W.3d 291 (Tex. App. -- Houston [1st Dist.] 2000), in which the Court of Appeals held that abatement of appeal was proper in order to make a determination as to whether the appellant had received effective assistance of counsel where the 30-day period for filing a motion for new trial had expired.   However, the facts in the present action are distinguishable from those in <u>Jack</u>.   The record in <u>Jack</u> indicated that no attorney had been appointed to handle the appeal during the critical 30-day period.   <u>Id.</u> at 293.   In contrast, the state's records show that appellate counsel was appointed for Sanchez on June 4, 2002, the date of his conviction. See Tr. at 119.   The fact that the appellate counsel did not move for a new trial does not overcome the presumption that Sanchez received effective assistance of counsel in that the option was considered and rejected for a valid reason.   <u>See</u> <u>Smith v. State</u>, 17 S.W.3d 660, 663 (Tex. Crim. App. 2000), <u>citing</u> <u>Oldham v. State</u>, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).   <u>See</u> <u>also</u> <u>Buxton v.</u> <u>Johnson</u>, 879 F.2d 140, 147 (5th Cir. 1989).   Moreover, Sanchez cannot show that he was prejudiced by the alleged deficiency in failing to move for a new trial.   There is no indication that such a motion would have been granted or that the outcome of his appeal would have been different.   <u>Id.</u> Consequently, the state court decision is not contrary to federal law established by the Supreme

-21-

Court, and Sanchez is not entitled to habeas relief regarding the absence of counsel's motion for new trial.

There is no support to Sanchez's claim that his appellate attorney was ineffective by failing to raise the claims listed above.  It is well settled that an attorney is not required to raise every possible ground on appeal.  Sharp v. Puckett, 930 F.2d 450 (5th Cir. 1991).  Further, courts have recognized that it is sound strategy to present only the soundest arguments in an appellate brief and that including weaker grounds only serves to dilute an advocate's effectiveness.  Jones v. Barnes, 103 S.Ct. 3308, 3313 (1983).

Sanchez argues that his appellate attorney was deficient in failing to argue that the trial judge abused her discretion by denying, off the record, his request for new counsel.  This court has noted the efforts the trial court made to determine that Scott was providing effective representation.  In light of Sanchez's contumacious behavior and the trial court's painstaking attempts to counsel Sanchez, the trial court did not err in refusing to appoint new counsel.  See Yohey v. Collins, 985 F.2d 222 (5th Cir. 1993). Sanchez's appellate counsel was not deficient in omitting any claim regarding the trial court's off-the-record denial of Sanchez's request for new counsel.

Sanchez also contends that his appellate counsel was ineffective by failing to raise the issue of ineffective assistance

of trial counsel.  As stated above, such claims are generally raised in a state habeas proceeding.  See Mallett, 65 S.W.3d at 63. Sanchez did include an ineffective assistance of trial counsel claim in his state habeas application.  Ex parte Sanchez, No. 04,557-04 at 07.  The application was denied on the merits. See id. Vol. 2 at cover.  Presenting the claim twice to the Texas appellate courts would have been redundant and unnecessary, and Sanchez cannot show that he was harmed by his appellate attorney's failure to include it in his direct appeal.  See Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990).

Finally, Sanchez argues that his appellate attorney was ineffective for failing to raise an insufficiency of the evidence claim.  Specifically, Sanchez contends that the appellate attorney should have argued that there was insufficient evidence to prove that he possessed more than one gram of heroin as stated in the indictment.  See Memorandum, Docket Entry No. 2, at 19 (Memo at 15).  During the trial the State's chemist testified that the aggregate weight, including dilutants and adulterants, was 2.7 grams. 7 SOF at 96-97.  Sanchez apparently believes that he could prevail by demonstrating that he had less than one gram of pure heroin because the substance in question was diluted.  Sanchez labors under a misunderstanding of the law.  Under Section 481.112(c) of the Texas Health and Safety Code, a person commits a felony offense if he possesses, without proper authorization,

between one gram and four grams of heroin, <u>including</u> adulterants and dilutants.  <u>See</u> <u>Cuddy v. State</u>, 107 S.W.3d 92 (Tex. App. -- Texarkana 2003, no pet.) (discussing change in law to include aggregate weight in determining quantity of controlled substance). Consequently, it may be presumed that Sanchez's appellate counsel made a reasonable strategic decision not to include this argument in his brief in light of the chemist's testimony indicating that the substance was thoroughly tested.  <u>See</u> <u>Hardamon v. United States</u>, 319 F.3d 943, 949 (7th Cir. 2003).

Sanchez has not shown that the State court's rejection of the ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court.  Nor was the decision an unreasonable determination of the facts.

## VII.  <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253, Sanchez needs to obtain a Certificate of Appealability before he can appeal this Memorandum Opinion and Order dismissing his petition.  To obtain a Certificate of Appealability Sanchez must make a substantial showing of the denial of a constitutional right.  <u>Williams v. Puckett</u>, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing, Sanchez must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

-24-

Lucas v. Johnson, 132 F.3d 1069, 1073 (5th Cir. 1998).  For the reasons stated in this Memorandum Opinion and Order Sanchez has not made a substantial showing of the denial of a constitutional right. Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996).  Therefore, the court will deny the issuance of a Certificate of Appealability in this action.

### VIII.  Conclusion

The respondent's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**, and a Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this 19th day of December, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE